[No. E006593. Fourth Dist., Div. Two. Aug. 24, 1990.]

THE PEOPLE, Plaintiff and Appellant, v.
MICHAEL RAY BURGENER, Defendant and Respondent.

## COUNSEL

Grover C. Trask II, District Attorney, Don R. Inskeep, Assistant District Attorney, Brian S. McCarville, Wayne T. Astin and Paul Zellerbach, Deputy District Attorneys, for Plaintiff and Appellant.

Michael Satris, under appointment by the Court of Appeal, for Defendant and Respondent.

## OPINION

**TIMLIN, Acting P. J.—**

### FACTS

In 1980, Michael Ray Burgener killed a convenience store clerk while robbing the store of approximately $50. The following year, a jury convicted him of first degree murder (Pen. Code, § 187), robbery (Pen. Code, § 211), and being an ex-felon in possession of a gun (Pen. Code, § 12021). The jury further found that Burgener used a firearm during the first two offenses (Pen. Code, § 12022.5) and inflicted great bodily injury during the second (Pen. Code, § 12022.7). As to the murder, the jury found that it was committed with express malice aforethought, deliberation, and premeditation, and, under the 1978 death penalty law, that it occurred during the robbery (Pen. Code, § 190.2, subd. (a)(17)(i)). Burgener was sentenced to death.

On automatic appeal to the Supreme Court, the guilt and special circumstance findings were affirmed, but the penalty judgment was reversed. A second penalty phase was conducted, during which Burgener brought a motion for mistrial, based on the prosecutor continually referring to evidentiary matters which had already been ruled inadmissible by the trial court. The motion was taken under submission. At the conclusion of the second penalty phase, the jury again returned a verdict of death. Burgener moved to modify the verdict from death to life imprisonment without the possibility of parole. (Pen. Code, §§ 190.4, 1181, subd. (7).)[1] The court granted the motion to modify and denied the motion for mistrial, finding that the latter was mooted by the granting of the former. The trial court then imposed the penalty of life without the possibility of parole. The People here appeal the granting of the motion for modification of the verdict apparently under

---

[1] Burgener also brought a motion for a new trial, urging, inter alia, the same ground as his mistrial motion. The former was never ruled upon by the trial court.

Penal Code sections 190.4, subdivision (e), and 1238, subdivision (a)(5) and (6). Because we agree with them that the trial court considered improper factors in granting the motion, we reverse and remand with directions to the trial court to reconsider and rule upon the motion in accordance with the factors listed in Penal Code sections 190.4, subdivision (e), and 190.3 and no others.

## THE MOTION TO MODIFY

In granting the motion to modify, the trial court stated: "Some of the things I'm going to review, take into consideration are: Considerable improper evidence that was before the jury. The considerations regarding matters brought before the jury improperly as noted by the defense included uncharged crimes and other matters deemed improper by the Court. [¶] Defense has referenced the transcript where this occurred not once, not twice, not thrice, but 16 different times[.] [The court then reviewed the evidentiary matters.] A total of 16 matters. The matters are brought before the jury, all of which had to be stricken by the Court, all of which the jury were [sic] told to disregard. [¶] The Court admonished the jury to disregard all of this evidence, to ignore it. That's something extremely difficult for jurors to do. While they may in good faith attempt to do so, they still have heard it, it remains in their minds nevertheless while they try to determine the proper penalty. [The court then addressed the most damaging aspect of this evidence.] I have no doubt that the jury in good faith reached a verdict to impose the death penalty. The jury, however, was faced with the impossible task of ignoring all of the improper evidence that I have mentioned. [¶] Considering the gravity of the situation, were the death penalty to be imposed, it would appear most likely on the automatic appeal and review by the California Supreme Court, it would reverse and remand, causing the entire penalty phase to be retried or the alternative penalty to be imposed, which would be the third trial on that penalty. The third trial would again involve thousands of dollars of expense, months of jury selection, presentation of evidence. [The court went on to summarize the evidence of guilt, pointing out that it was somewhat equivocal. The court then reviewed the aggravating and mitigating factors involved in the current offenses and Burgener's prior record.] Defendant's parents and siblings testified on his behalf and were very supportive. Defendant as a child was hyperactive and had considerable difficulty both at home and school. Defendant's siblings stated defendant got blamed and punished for most everything including many things for which he was not responsible.

"At approximately age 12 defendant was expelled from school and placed in a reform school where he was regularly controlled by drugs, primarily Thorazine. Thereafter, defendant's family moved to California and

defendant's legal difficulties continued, with the defendant being in and out of the Youth Authority. And the defendant was abusing drugs and alcohol.

"Dr. Forbes, a psychiatrist, testified that defendant was abused as a child, was never given the necessary therapy to try to straighten out his life.

"Defendant was committed early on to state prison, was housed in San Quentin as one of the youngest inmates. The doctor felt the defendant, indeed, had some redeeming virtues and with the proper therapy he would have had a totally different and law-abiding life.

"Defendant has been on the death row in San Quentin for some six plus years, various correctional officers from San Quentin testified on defendant's behalf. Defendant has been a model prisoner on death row. He has not only not been a disciplinarian problem but has been very helpful to authorities there and acting as a calming influence on younger and more violent inmates.

"Defendant testified in 1988 he had become active in the church and had accepted Christ as his personal Savior. The chaplain testified the defendant regularly was the most faithful inmate on death row. And in the chaplain's opinion defendant was, indeed, a devout Christian with redeeming values and had a good relationship with members of his family who visited from time to time.

"Defendant took and completed various courses. Defendant also painted pictures including one of an eagle for one of his sisters.

"I have considered and weighed the aggravating evidence with the mitigating evidence, and I have also taken into consideration some of the improper evidence before the jury.

"All of the aggravating circumstances occurred years ago when defendant was an angry and reckless young man. The only recent incident was an altercation in the jail in which defendant failed to stay against the wall and apparently he was attempting to see some violent incident involving another inmate.

"Defendant's conduct in San Quentin was exemplary by the testimony of the San Quentin correctional officers who testified in this trial. His conduct throughout this retrial of the penalty phase has likewise been exemplary.

"It appears to me defendant has demonstrated to this Court that he does, indeed, have some redeeming social values and deserves the granting of the

motion to modify the verdict from death to life in prison without the possibility of parole.

"I've taken into consideration also what has been referred to as a lingering doubt regarding the defendant's guilt. A lingering doubt is that doubt which may exist beyond a reasonable doubt, beyond all possible doubt.

"The prime witnesses, 'X' and 'N,' whose testimony was the crucial testimony to his conviction, were persons who took drugs, committed various violations of the law. 'N' was in trouble from time to time and cooperated with law enforcement from time to time in order to try to ameliorate her own difficulties.

"The most damaging testimony was that of hers in which she testified before the jury improperly that he shot somebody at the Pussycat Theater. [This was a matter ruled inadmissible by the court.] This was most unfortunate because also presented to the defense with regard to the discovery as to the Pussycat Theater incident, it's the finding of the Court that the only evidence that was presented there was a report of a law enforcement officer in which 'N' was questioned shortly after the Pussycat Theater homicide. At that time when 'N' was asked about it, included in the report, is that 'N' denied she knew anything about it. She stated that the only thing she knew about it she had read in the newspaper.

"The inquiry was on whether either Mr. Burgener or 'X' may have had some involvement with regard to that Pussycat Theater homicide. And that particularly is one of the most devastating pieces of evidence that the Court ordered stricken, ordered the jury to disregard; but that is, in my opinion, truly one of those situations where you cannot unring the bell. The jury has heard the bell ring, the Court can tell them, 'You didn't hear any bell,' and they know, 'We didn't hear any bell,' and they can talk about it and say, no, they didn't hear any bell, but they also know they heard the bell.

"The fact that 'N' had told law enforcement something slightly contrary shortly after the incident itself which you were talking about seven years ago did not go before the jury because it was feared it would only emphasize the incident.

"We know that there was not sufficient evidence to justify the prosecution in the sense the decision was made not only to not prosecute but not to use it as an aggravating circumstance or evidence of aggravating circumstances in this case as it was tried originally.

"And, again, it was not included in the prosecution of the retrial of the penalty phase, although there was some mention that they should have

amended. Of course, if that were the case, they should have amended early on. Presumably if this Court granted a motion for a new trial, they could purport to try to add that, although it would seem totally against our principles of justice by reason of all the errors that have taken place in this case.

"Referring back to [the original penalty-phase trial], Judge McFarland had as much compassion as any Judge. However, he heard no mitigating evidence, no mitigating evidence was presented, and probably there was little mitigating evidence that could be presented.

"By and large, all the mitigating evidence that was received in this trial has been primarily defendant's conduct after that. And, as I note, there's been nothing of any particular note since he was committed to death row back in 1981. The other evidence was in the nature of testimony of the psychiatrist, testimony of the psychologist.

"It appears to be that the Court really has no reasonable judicious path to follow except that of granting the motion to modify the verdict to the imposition of a sentence of life in prison without the possibility of parole. That eliminates any question as to coming back for a long expensive retrial. It eliminates really any legal problems in the future because that is the best result the defendant could hope for under all the circumstances.

"I also have considered the fact of the improper evidence that our jury here listened to and returned faithfully. And I, therefore, deny the motion for mistrial, having already granted the motion to modify the sentence."

## DISCUSSION

Penal Code section 190.4, subdivision (e), provides, in pertinent part: "In ruling on the application [for modification of a verdict imposing the death penalty], the judge shall review the evidence, consider, take into account, and be guided by the aggravating and mitigating circumstances referred to in Section 190.3,[2] and shall make a determination as to whether the jury's

---

[2] Penal Code section 190.3 lists those circumstances:

"(a) The circumstances of the crime of which the defendant was convicted in the present proceeding and the existence of any special circumstances found to be true pursuant to Section 190.1.

"(b) The presence or absence of criminal activity by the defendant which involved the use or attempted use of force or violence or the express or implied threat to use force or violence.

"(c) The presence or absence of any prior felony conviction.

"(d) Whether or not the offense was committed while the defendant was under the influence of extreme mental or emotional disturbance.

"(e) Whether or not the victim was a participant in the defendant's homicidal conduct or consented to the homicidal act.

findings and verdicts that the aggravating circumstances outweigh the mitigating circumstances are contrary to law or the evidence presented."

■ We have no problem with the extent to which the trial court independently reweighed the evidence, considered lingering doubt regarding guilt as a mitigating factor, and rebalanced the aggravating and mitigating circumstances, all of which are within its powers under Penal Code section 190.4. (*People* v. *Lang* (1989) 49 Cal.3d 991 [264 Cal.Rptr. 386, 782 P.2d 627]; *People* v. *Bonillas* (1989) 48 Cal.3d 757 [257 Cal.Rptr. 895, 771 P.2d 884]; *People* v. *Hernandez* (1988) 47 Cal.3d 315 [253 Cal.Rptr. 199, 763 P.2d 1289]; *People* v. *Rodriguez* (1986) 42 Cal.3d 730 [230 Cal.Rptr. 667, 726 P.2d 113].)

■ Additionally, although the trial court did not separately state specific findings and specific reasons for its determination, and then recite its determination, its statements during the reweighing and balancing process amounted to sufficient findings and reasons. ■ Further, implied in the court's granting the application was its determination that the jury's findings and verdicts that the aggravating circumstances outweigh the mitigating circumstances are contrary to law or the evidence presented. As stated in *People* v. *Lewis* (1987) 191 Cal.App.3d 1288 at page 1296 [237 Cal.Rptr. 64]: " 'It is a basic presumption indulged in by reviewing courts that the trial court is presumed to have known and applied the correct statutory and case law in the exercise of its official duties.' [Citation omitted.]"

■ However, the court lacked authority for considering the following matters in making its decision to modify the verdict: 1) the possibility the jury could not, as it was instructed, ignore the successfully objected-to evidence at the trial, 2) a "most likely" reversal by the Supreme Court, and 3) the length and expense of a retrial of the penalty phase. The record shows the court repeatedly referring to factors 1 and 2 in its weighing process under Penal Code section 190.3. We reject Burgener's invitation to view the

---

"(f) Whether or not the offense was committed under circumstances which the defendant reasonably believed to be a moral justification or extenuation for his conduct.

"(g) Whether or not defendant acted under extreme duress or under the substantial domination of another person.

"(h) Whether or not at the time of the offense the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect, or the affects of intoxication.

"(i) The age of the defendant at the time of the crime.

"(j) Whether or not the defendant was an accomplice to the offense and his participation in the commission of the offense was relatively minor.

"(k) Any other circumstance which extenuates the gravity of the crime even though it is not a legal excuse for the crime."

court's remarks about these matters as inapplicable to its decision to modify the verdict—the record proves otherwise. In our view the above-mentioned three factors individually and collectively permeated, and to some extent dominated, the reviewing, reweighing and rebalancing process by the trial court.

Under the circumstances, we are compelled to reverse the granting of the motion to modify the verdict and to remand this matter to the trial court for reconsideration of the motion and for a ruling *not* based on the following grounds: 1) the jury's hearing of improper evidence, 2) the Supreme Court's possible reversal of the verdict, 3) the possibility of a third trial of the penalty phase, and 4) any future legal problems. (*People* v. *Rodriguez, supra,* 42 Cal.3d at p. 794.)

In so reviewing we apply a harmless error under any standard test. It is acknowledged that the California Supreme Court has not enunciated a test for reversible error relating to a trial court's decision on an application for modification. In *People* v. *Brown* (1988) 46 Cal.3d 432, 462 [250 Cal.Rptr. 604, 758 P.2d 1135], it said: "Although we have not yet determined the applicable prejudicial error standard for reviewing trial court error in ruling on the statutory motion for modification of sentence, the error . . . was harmless under any standard." We hold that the trial court's injection of the above factors into its review of the evidence, reweighing such and rebalancing aggravating and mitigating factors was not harmless under any standard as to the People. Its prejudice to the People was an unfair proceeding and there is a reasonable probability that the court's determination would have been different absent such error.

We need not discuss defendant's contention that the trial court's modification of the death penalty verdict constitutes an "implied acquittal" on the death sentence for double jeopardy purposes because we are reversing the modification decision.

### DISPOSITION

The penalty judgment is vacated. The granting of the motion to modify the verdict is reversed and the matter is remanded. The trial court is directed to reconsider and rule on the verdict-modification application in accordance with the views expressed in this opinion.[3]

---

[3] We point out that the trial judge, while performing his/her duties under Penal Code section 190.4, subdivision (e), may not consider evidence which the jury did not consider during the penalty phase of the trial, including posttrial probation officer reports. (*People* v. *Lewis* (1990) 50 Cal.3d 262, 287 [266 Cal.Rptr. 834, 786 P.2d 892].)

If it denies the motion to modify, it next shall vacate its earlier action denying defendant's motion for mistrial and hear, consider, and determine it on the merits. If the court denies the motion for mistrial, it then shall hear, consider, and decide defendant's motion for new trial.

Preferably, the trial judge, J. William Mortland, should reconsider and decide all three motions. If, however, he is unavailable, the motion to modify and the motion for new trial may be heard before another judge of the same court. (*People* v. *Lewis, supra*, 50 Cal.3d 262, 287; *People* v. *Brown* (1988) 45 Cal.3d 1247, 1264, fn. 7 [248 Cal.Rptr. 817, 756 P.2d 204]; *People* v. *Holzer* (1972) 25 Cal.App.3d 456, 463-464 [102 Cal.Rptr. 11].)

McDaniel, J.,* and Dougherty, J.,† concurred.

Respondent's petition for review by the Supreme Court was denied November 20, 1990. Mosk, J., and Broussard, J., were of the opinion that the petition should be granted.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

†Assigned by the Chairperson of the Judicial Council