[No. H006959. Sixth Dist. Dec. 23, 1991.]

THE PEOPLE, Plaintiff and Appellant, v.
MARK CREW, Defendant and Respondent.

COUNSEL

Leo Himmelsbach, District Attorney, David N. Davies, Assistant District Attorney, and Thang Nguyen Barrett, Deputy District Attorney, for Plaintiff and Appellant.

Thomas Lundy for Defendant and Respondent.

OPINION

**CAPACCIOLI, Acting P. J.—**

*Summary*

The People appeal after the trial court granted an automatic motion to modify the jury's verdict of death to one of life without possibility of parole.

(Pen. Code, § 190.4, subd. (e), hereafter, § 190.4(e).) In ruling on the motion the judge compared the facts of the present case with the facts of other capital cases he had heard in which the death penalty had been imposed. Based in part on this comparison the judge concluded the death penalty was not warranted in the present case. The People argue that this comparison, known as intercase proportionality review, was unauthorized because the facts of the other capital cases were not presented to the penalty jury herein. The People also contend the court's remaining statement of reasons for granting the motion was inadequate. As the first contention has merit we will reverse and remand so that the court may reconsider the motion based solely on the evidence presented to the penalty jury.

## Facts and Proceedings

Defendant met the victim at a bar in San Jose during the fall of 1981. After a brief affair the two separated in the winter of 1981. They reconciled in the spring of 1982 and were married in Reno in June 1982. The marriage soon soured as defendant began to stay out late at night and frequent the bar where he had met the victim. During the first month of marriage the victim twice returned to the bar and saw defendant with a different woman each time. That same month defendant proposed marriage to a woman named Lisa, who agreed but only after her divorce was final. Defendant and the victim separated before June had passed.

Freed from the confines of marriage, defendant and his friend Richard Elander travelled to South Carolina in June 1982 to visit defendant's mother and his stepfather, Bergin Mosteller. During the trip defendant renewed his conversation (commenced in May 1982) with Elander regarding ways to kill the victim and dispose of her body so it would never be found. After arriving in South Carolina, defendant and Elander included Mosteller in their discussion.

In July 1982 the victim and a friend took their own cross-country trip. Their journey led them to South Carolina, and eventually they happened upon the town where defendant was staying. The victim telephoned defendant and the two spent the night together. This encounter persuaded the victim to reconcile with defendant by moving to South Carolina to live with him. The victim returned to California and scheduled her departure for August 1982.

Defendant returned to California in August 1982 to escort the victim to South Carolina. The ostensible itinerary called for defendant to drive the victim's pickup truck loaded with personal possessions while the victim

would follow in her Corvette. Mosteller would drive the victim's horse to Texas, and Elander would fly to Texas to drive the horse to South Carolina. Mosteller would drive the victim's pickup truck to South Carolina while defendant and the victim would take a two-week belated honeymoon tour of the South in the Corvette. In order to make their initial few months in South Carolina as easy as possible, the victim would give custody of her two children to her former husband until her anticipated return to California for Christmas 1982. To finance their trip and initial stay in South Carolina, defendant persuaded the victim to cash out her $8,000 savings account.

The real itinerary, however, called for defendant to murder the victim while en route to South Carolina and to dispose of her body so it would never be found. The victim's personal possessions would be sold and the proceeds divided. Thereafter defendant would disclaim any knowledge of the victim's whereabouts.

Mosteller departed first with the horse, but rather than driving to Texas he boarded the horse at a San Jose barn and drove to Reno. He left his car at the airport and reported it stolen to the police. He then flew back to South Carolina.

Defendant and the victim planned to leave on August 23, 1982, from the home of the victim's parents in Santa Cruz. The morning of the 23d defendant told the victim's mother that the horse had arrived safely in Texas. That afternoon defendant telephoned Lisa (who was ignorant of the whole affair) and told her he was stuck in Stockton picking up a horse but that he would arrive soon afterward. The rest of the afternoon was spent loading the victim's vehicles. After a tearful departure the victim and defendant headed east.

That night the victim and defendant stopped in a rural area. The victim was sitting peacefully when defendant approached her from the rear, shot her in the back of the head, rolled her body down a ravine, and left her for dead.

The next day, August 24th, defendant and a friend, Bruce Gant, got drunk and returned to the site of the shooting to dispose of the body and take the Corvette. To defendant's surprise, the victim's body appeared to have moved from where he had last seen it. Defendant screamed at Gant who, thinking the victim might still be alive, strangled her and cut off her head. Defendant and Gant then buried the body in Gant's backyard.

On the 25th defendant showed up at Lisa's with the victim's pickup truck. Defendant showered her with gifts, drove her to the barn to see the victim's horse, and then stopped by Gant's house.

On the 26th defendant gave Lisa $5,000 of the victim's cash so that a friend of hers who worked at a bank could prepare a cashier's check payable to Mosteller.

Several days later defendant and Lisa departed on a cross-country trip to South Carolina. While in Texas defendant received a telephone call from Gant, who reported that the odor from the decomposing corpse was causing him some concern. As a result of his discussion with defendant, Gant eventually dug up the corpse, placed the body in a 55-gallon drum and the head in a 5-gallon paint bucket, filled them with cement, and dumped them off a bridge. Neither the drum nor the bucket was ever recovered.

While in South Carolina defendant deposited two checks made out to the victim totalling $2,075 in a joint account. Eventually defendant withdrew and spent the money. The $5,000 from the cashier's check was split among defendant, Mosteller and Elander. Defendant sold the victim's pickup truck for $3,200 and the Corvette for approximately $8,000 in cash and a trade-in. The victim's personal possessions fetched $500 to $600 at a local flea market.

The victim's parents and friends became suspicious after they became aware she was missing. After an extensive investigation, the heinous tale came to light.

The jury found defendant guilty of first degree murder. (Pen. Code, §§ 187, 189.) A special circumstance was found to be true in that defendant had intentionally committed the murder for financial gain. (Pen. Code, § 190.2, subd. (a)(1).)

The People presented no evidence at the penalty phase. Defendant called as witnesses his father, his grandmother, a family friend, a high school classmate, an Army lieutenant colonel under whom defendant had served, three correctional officers at the main jail, and an expert in the field of corrections. These witnesses testified to defendant's fine character, his background, his good behavior while incarcerated, and his probable positive contributions to the state prison system if he were allowed to live.

On rebuttal the People called a jail inmate who testified that defendant had told him of his plans to escape. After the informant reported defendant's plans to the authorities defendant threatened to kill him. The People also called a jail deputy who testified that the inmate was a reliable informant.

The jury found that the aggravating factors outweighed the mitigating factors and imposed the death penalty. (Pen. Code, § 190.3.)

The court, however, concluded that the mitigating factors outweighed the aggravating factors and hence granted the section 190.4(e) motion.[1]

---

[1]The following colloquy encompasses the court's statement of reasons given at the hearing on the section 190.4(e) motion.

"THE COURT: . . . In connection with the case, Mr. Davies [the prosecutor] is quite right. I had not had any experience in a murder case where there was not a body that the court's—whether there was some proof of it, by virtue of the deceased being found. And when I came into the case, that did bother me.

"However, that tended to fade as Mr. Davies went forward with the evidence and ultimately convinced the court beyond a reasonable doubt the defendant did willfully, unlawfully kill the deceased. That he did so for a financial gain and that the special circumstance is true.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"In connection with the court's experience relative to special circumstance—special circumstance cases, in the cases that the court had ruled on before—and when I first came into this superior court, it was with a murder case to be tried. Young man who had killed six people, random killing. And the jury in that case returned a death penalty verdict. And the court upheld that verdict. And I do believe that the death penalty is a proper penalty in certain cases. I don't think it is a penalty that should be imposed in every case.

"But I have great confidence in the jurors. And I think in this county particularly, we've had jurors who are outstanding. And I think we had a jury in this case that the jurors were outstanding in every respect.

"During the course of going over these cases, one of the cases that I tried a number of years ago came to my attention. A defendant who had raped and killed the wife of a friend of his, stabbing her some twenty-one times. The jury in that case imposed the death penalty. The court agreed with the penalty. What was of interest to me at this juncture was that that has been some nine or ten years ago and that case is still on appeal. And every case that the court has tried in which the death penalty has been imposed is still on appeal.

"Another case that was really an execution type, robbery case of a liquor store, with three employees in the liquor store, were forced in the back room and made to lie face down, and the defendant fired three shots. Under the grace of God, only one person was killed out of the three shots. Each [of] those cases, there has been something more than there was in this case.

"In the Caro case, for example, Caro shot and killed two young people. They were cousins. Mr. Caro had previously been convicted of a rape, I believe there was a kidnapping, perhaps both, and served a term thereafter. He committed the crimes of which he was convicted here, and the jury imposed the death penalty, and the court agreed.

"I only cite those cases for the purposes that they do indicate to me, at least in those cases where the death penalty has been imposed in other cases, there was always something in addition. And only once during the course of sitting as a judge in these cases have I found the verdict of a jury to be unacceptable, and the court instead of imposing the death penalty, imposed life in prison without possibility of parole. But that was for totally different reasons than exist or are present in the case here.

"And I think the reasons that have been presented by counsel are particularly unique to this case. I wanted to mention that I was certainly impressed by the defense's presentation in the penalty phase.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"As I was saying, that the penalty phase, I was impressed by the evidence that was ad[d]uced by the defense in connection with determining the penalty to be imposed. And counsel indicated in his pleadings that evidence in mitigation, the lack of prior criminal activity involved or threatening the use of violence. And I don't recall having had a case where that was absent in a murder case. The absence of a prior felony conviction. And that

The minute order reflecting the court's decision stated: "The Court, having sentenced the defendant in the above-entitled cause, sets down the following reasons for its ruling: [¶] 1) a lack of any prior criminal activity involving violence or the threat to use force or violence; [¶] 2) the absence of any prior felony conviction; [¶] 3) the defendant's background; [¶] 4) the defendant's interpersonal relationships; [¶] 5) the defendant's custodial conduct; and [¶] 6) the testimony of Jerry Enomoto, an expert witness regarding the Department of Corrections."

*Analysis*

■ We are unpersuaded by the People's initial contention that the court failed to state adequate reasons on the record for granting the section 190.4(e) motion. The above quoted transcript of the trial court's statements,

---

has not been consistent. Some cases, couple of cases it was true. In most cases, it wasn't a factor. And the defendant's background is certainly a factor in this case.

"And the defendant's interspousal—

" . . . . . . . . . . . . . . . . . . . . . . . . . .

"Interpersonal relationships.

" . . . . . . . . . . . . . . . . . . . . . . . . . .

"And the court received some letters mostly from people who had already testified in the case.

"Did you see those, Mr. Davies?

"MR. DAVIES: I did, Your Honor. I don't know—I don't know if its proper to consider them at this stage, if they didn't testify. But I have decided not to make any objection to them.

"THE COURT: As I hadn't reviewed them with any particular aspect to find out what they wanted to say or what they did say, because they had, most of them, as far as I can see at a glance, had testified at trial; isn't that correct?

"MR. MOREHEAD: That is correct.

"MR. DAVIES: Most of them had, Your Honor.

"THE COURT: One that I wanted to indicate in the record, was a letter from Mr. Crew's former wife, which was a letter indicating that the former wife's views, which were, as far as I was concerned, in favor of Mr. Crew's receiving something other than the death penalty. I do agree in this case, and I grant the defendant's motion in arrest of judgment. And the court sets aside the death penalty that was returned by the jury and imposes a sentence of life imprisonment without possibility of parole.

"And the court is mindful of the jurors that spent their time and efforts, and I mean no disrespect for those jurors because I thought they were outstanding, and I would be happy to have them as jurors in any case.

"However, after review of the mitigating circumstances and aggravating circumstances, the court has concluded that the mitigating circumstances outweighs the aggravating circumstances. And the court is prepared to proceed with the sentencing of the defendant.

"Counsel is in a position to proceed?

"MR. MOREHEAD: Your Honor. We're ready to proceed. We thank the court.

"MR. DAVIES: Your Honor, the court had indicated you were granting the motion in arrest of judgment. I think the court misspoke. Is that—there was a motion in arrest of judgment. The court denied that.

"THE COURT: Oh, thank you. Thank you.

"MR. DAVIES: This would be the automatic motion to modify the verdict under 190.4.

"THE COURT: That was the court's intention."

coupled with the minute order specifying reasons for the modification of the death verdict, comply with the requirement in section 190.4(e) that "[t]he judge shall state on the record the reasons for his findings." While greater detail in trial court rulings is almost always beneficial to an appellate court, here the trial court's explanation why the mitigating factors outweighed the aggravating factors is "sufficient 'to assure thoughtful and effective appellate review.' [Citation.]" (*People* v. *Rodriguez* (1986) 42 Cal.3d 730, 794 [230 Cal.Rptr. 667, 726 P.2d 113]; accord *People* v. *Hernandez* (1988) 47 Cal.3d 315, 373 [253 Cal.Rptr. 199, 763 P.2d 1289]; *People* v. *Bonillas* (1989) 48 Cal.3d 757, 801 [257 Cal.Rptr. 895, 771 P.2d 844]; *People* v. *Burgener* (1990) 223 Cal.App.3d 427, 434 [272 Cal.Rptr. 830].) Therefore we see no error in this respect.

■ We are, however, persuaded by the People's principal argument that the trial judge erred by considering and relying on the facts of other capital cases with which he had been involved in deciding the section 190.4(e) motion.[2]

■ The trial judge's function in ruling on a section 190.4(e) motion is "independently to reweigh the evidence of aggravating and mitigating circumstances and then to determine whether, in the judge's independent judgment, *the weight of the evidence supports the jury verdict*. [Citations.]" (*People* v. *Lang* (1989) 49 Cal.3d 991, 1044-1045 [264 Cal.Rptr. 386, 782 P.2d 627], original italics.)[3] In fulfilling its duty under section 190.4(e), the trial court's review of the evidence is limited to that which was presented to the penalty jury. (§ 190.4(e); *People* v. *Jennings* (1988) 46 Cal.3d 963,

[2]Section 190.4(e) provides: "In every case in which the trier of fact has returned a verdict or finding imposing the death penalty, the defendant shall be deemed to have made an application for modification of such verdict or finding pursuant to subdivision 7 of Section 11[81]. In ruling on the application, the judge shall review the evidence, consider, take into account, and be guided by the aggravating and mitigating circumstances referred to in Section 190.3, and shall make a determination as to whether the jury's findings and verdicts that the aggravating circumstances outweigh the mitigating circumstances are contrary to law or the evidence presented. The judge shall state on the record the reasons for his findings.

"The judge shall set forth the reasons for his ruling on the application and direct that they be entered on the Clerk's minutes. The denial of the modification of the death penalty verdict pursuant to subdivision (7) of Section 1181 shall be reviewed on the defendant's automatic appeal pursuant to subdivision (b) of Section 1239. The granting of the application shall be reviewed on the People's appeal pursuant to [section 1238, subdivision (a)] [] (6)." (Bracketed material added, see *People* v. *Rodriguez, supra*, 42 Cal.3d 730, 790, 792, fns. 23 and 25 [noting draftperson's errors]; *People* v. *Bonillas, supra*, 48 Cal.3d 757, 799, fn. 13 [using brackets to correct errors].)

[3]Stated another way, "the trial judge is required by section 190.4(e) to 'make an independent determination whether imposition of the death penalty upon the defendant is proper in light of the relevant evidence and the applicable law.' [Citations.] That is to say, he must determine whether the jury's decision that death is appropriate under all the circumstances is adequately supported. [Citation.] And he must make that determination independently, i.e., in

994-995 [251 Cal.Rptr. 278, 760 P.2d 475]; accord *People* v. *Lang, supra,* 49 Cal.3d 991, 1044; *People* v. *Marshall, supra,* 50 Cal.3d 907, 942.) Thus, the specific statutory requirement that the jury weigh the aggravating and mitigating factors in considering the appropriate penalty restricts the parties to presenting evidence that bears on one or more of those factors, which are set forth in Penal Code section 190.3.[4] (*People* v. *Boyd* (1985) 38 Cal.3d 762, 772 [215 Cal.App.3d 1, 700 P.2d 782]; *People* v. *Thompson* (1988) 45 Cal.3d 86, 123 [246 Cal.Rptr. 245, 753 P.2d 37]; but see *Boyde* v. *California* (1990) 494 U.S. 370, 381-382 [108 L.Ed.2d 316, 329-330, 110 S.Ct. 1190] [holding that evidence of a capital defendant's background, character, and postcrime good prison behavior is relevant to penalty determination, and that former CALJIC No. 8.84.1, subd. (k) did not preclude consideration of such evidence].)

---

accordance with the weight he himself believes the evidence deserves. [Citation.]" (*People* v. *Marshall* (1990) 50 Cal.3d 907, 942 [269 Cal.Rptr. 269, 790 P.2d 676].)

This standard mirrors the long-established trial court standard of review of new trial motions based on insufficiency of the evidence. (See *People* v. *Allison* (1989) 48 Cal.3d 879, 913-916 [258 Cal.Rptr. 208, 771 P.2d 1294] (conc. opn. of Kaufman, J.) and *People* v. *Frierson* (1979) 25 Cal.3d 142, 193, fn. 7 [158 Cal.Rptr. 281, 599 P.2d 587] (conc. opn. of Mosk, J.) [construing similar provision of 1977 death penalty law], cited with approval in *People* v. *Lang, supra,* 49 Cal.3d 991, 1045 and *People* v. *Marshall, supra,* 50 Cal.3d 907, 942; compare Pen. Code, § 190.4(e) [trial court to determine "whether the jury's findings and verdicts . . . are contrary to law or the evidence presented"], with Pen. Code, § 1181, subd. 7 [court may grant new trial or reduce punishment selected by the jury in lieu of granting a new trial "[w]hen the verdict or finding is contrary to law or evidence . . . ."].)

[4]Section 190.3 provides in relevant part:

"In determining the penalty, the trier of fact shall take into account any of the following factors if relevant:

"(a) The circumstances of the crime of which the defendant was convicted in the present proceeding and the existence of any special circumstances found to be true pursuant to Section 190.1.

"(b) The presence or absence of criminal activity by the defendant which involved the use or attempted use of force or violence or the express or implied threat to use force or violence.

"(c) The presence or absence of any prior felony conviction.

"(d) Whether or not the offense was committed while the defendant was under the influence of extreme mental or emotional disturbance.

"(e) Whether or not the victim was a participant in the defendant's homicidal conduct or consented to the homicidal act.

"(f) Whether or not the offense was committed under circumstances which the defendant reasonably believed to be a moral justification or extenuation for his conduct.

"(g) Whether or not defendant acted under extreme duress or under the substantial domination of another person.

"(h) Whether or not at the time of the offense the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect, or the affects of intoxication.

"(i) The age of the defendant at the time of the crime.

"(j) Whether or not the defendant was an accomplice to the offense and his participation in the commission of the offense was relatively minor.

"(k) Any other circumstance which extenuates the gravity of the crime even though it is not a legal excuse for the crime."

 Intercase proportionality review, which has been defined as "an examination of whether imposition of the death penalty in this case is disproportionate to the penalties imposed on other persons for similar offenses" (*People* v. *Lang, supra*, 49 Cal.3d 991, 1043; *Pulley* v. *Harris* (1984) 465 U.S. 37, 43-44 [79 L.Ed.2d 29, 35-37, 104 S.Ct. 871] [stating similar definition and rejecting claim that such review was required under 1977 California death penalty law]), is not one of the factors set forth in Penal Code section 190.3. It follows that the trial court should not have considered the facts of other capital cases to support its decision to grant the section 190.4(e) motion.

This conclusion is fully supported by the decisions of the California Supreme Court holding that intercase proportionality review is neither required nor authorized under California law. (See, e.g., *People* v. *Lang, supra*, 49 Cal.3d 991, 1043, citing *People* v. *Allen* (1986) 42 Cal.3d 1222, 1285-1288 [232 Cal.Rptr. 849, 729 P.2d 115] [equal protection does not require "disparate sentence" review of death sentences under Pen. Code, § 1170, subd. (f)]; *People* v. *Marshall, supra*, 50 Cal.3d 907, 939, fn. 8 [trial court is "without authority to rule on the issue" of intercase disproportionality; thus proffered evidence was irrelevant]; *People* v. *Morris* (1991) 53 Cal.3d 152, 234 [279 Cal.Rptr. 720, 807 P.2d 949] ["defendant is not entitled to comparative intercase review of his sentence, whether based on statistics or on an examination of those cases in which arguably more serious murders received lesser sentences. . . ."]; *People* v. *Wharton* (1991) 53 Cal.3d 522, 603 [280 Cal.Rptr. 631, 809 P.2d 290] [summary rejection of claim]; but cf. *People* v. *Jennings, supra*, 46 Cal.3d 963, 995 [federal and state Constitutions obligate the California Supreme Court "to set aside the penalty in any case in which it is aberrant or appears to have been imposed in an arbitrary or capricious manner"]; *People* v. *Hamilton* (1989) 48 Cal.3d 1142, 1187 [259 Cal.Rptr. 701, 774 P.2d 730] ["the California Constitution (art. I, § 17) prohibits imposition of a punishment disproportionate to the defendant's *individual* culpability . . . [but] [i]n view of defendant's calculated murder of his pregnant wife by shotgun, for reasons of personal gain, his sentence cannot be deemed disproportionate by any applicable standard. . . ."] (Original italics); accord *People* v. *Bacigalupo, ante*, pp. 103, 151 [2 Cal.Rptr.2d 335, 820 P.2d 559].)

The United States Supreme Court has also refused to require intercase proportionality review absent a showing that a state's " 'capital punishment system operates in an arbitrary and capricious manner, . . .' " (*Lewis* v. *Jeffers* (1990) 497 U.S. 764, __ [111 L.Ed.2d 606, 622, 110 S.Ct. 3092] quoting *McCleskey* v. *Kemp* (1987) 481 U.S. 279, 306-307 [95 L.Ed.2d 262, 287-288, 107 S.Ct.]; accord *Blystone* v. *Pennsylvania* (1990) 494 U.S. 299,

308-309 [108 L.Ed.2d 255, 265-266, 110 S.Ct. 1078].)[5] The Supreme Court has also rejected challenges to both the 1977 California death penalty law (*Pulley* v. *Harris, supra,* 465 U.S. 37, 51-53 [79 L.Ed.2d 29]) and 1978 California death penalty law (*Boyde* v. *California, supra,* 494 U.S. 370 [108 L.Ed.2d 316]; *California* v. *Brown* (1987) 479 U.S. 538, 541-543 [93 L.Ed.2d 934, 939-941, 107 S.Ct. 837]). Consequently, the California Supreme Court takes it as given that our state capital punishment system does not operate in an arbitrary or capricious manner. (*People* v. *Morris, supra,* 53 Cal.3d 152, 234.)

The foregoing authorities establish that intercase proportionality review is neither required nor authorized in California capital cases. ██ ██ ██ The trial court, though, conducted such a review by comparing the facts of the present case with the facts of other capital cases in determining whether the death penalty was warranted herein.[6] ██ After reviewing the facts from these other cases, the court stated: "I only cite those cases for the purposes that they do indicate to me, at least in those cases where the death penalty has been imposed in other cases, there was always something in addition." Although the court ostensibly disclaimed reliance on the facts of these other cases in ruling on the section 190.4(e) motion, and the minute order was silent on the point, the judge's remarks at the hearing reveal that he actually placed great reliance on the facts of these other cases, which to

[5] The United States Supreme Court has noted, though, that most state capital punishment statutes "require the reviewing court, to some extent at least, to determine whether, considering both the crime and the defendant, the sentence is disproportionate to that imposed in similar cases. Not every State has adopted such a procedure. In some States, such as Florida, the appellate court performs proportionality review despite the absence of a statutory requirement; in others, such as California and Texas, it does not." (*Pulley* v. *Harris, supra,* 465 U.S. 37, 44 [79 L.Ed.2d 29, 36].)

Although intercase proportionality review is not required absent a showing that a state's capital punishment system operates in an arbitrary and capricious manner, the Supreme Court has indicated that such review by state appellate courts tends to prevent arbitrary and capricious imposition of the death penalty. (Cf. *McCleskey* v. *Kemp, supra,* 481 U.S. 279, 306 [95 L.Ed.2d 262, 288-289] [implicitly approving use of proportionality review by a state supreme court on appeal]; *Walton* v. *Arizona* (1990) 497 U.S. 639, __ [111 L.Ed.2d 511, 529-530, 110 S.Ct. 3047] [same]; *Clemons* v. *Mississippi* (1990) 494 U.S. 738, 744-746 [108 L.Ed.2d 725, 735-736, 110 S.Ct. 1441] [proportionality review by state appellate courts is factor favoring rule allowing harmless error analysis where appellate court invalidates one of two or more aggravating circumstances].)

[6] We reject defendant's contention that the People invited this error by when, during argument on the motion, the prosecutor stated: "And I think you can look at this record, your honor, and over all your experience of many years, you could see that within that framework of statute, that the jury was not wrong." At most this statement reminded the court to exercise its independent judgment in ruling on the motion, as required by law. It did not invite the trial court to undertake an intercase proportionality review.

him seemed to disclose "something in addition."[7] The court's substantial reliance on the facts of these other cases in ruling on the section 190.4(e) motion was unauthorized and therefore erroneous.

Defendant, though, proposes that a trial judge necessarily and reasonably draws on his or her experiences in capital and noncapital cases in assessing whether a jury's death verdict in a given case is justified. By drawing on these experiences, that is, by engaging in a sort of de facto intercase proportionality review, a trial judge serves as a check on the arbitrary and capricious imposition of the death penalty. Thus, posits defendant, a trial judge cannot err by relying on his or her experiences in ruling on a section 190.4(e) motion.

There is a certain superficial allure to this argument, particularly since we think it is hardly reasonable to assume or even expect that a trial judge will be able to put his or her experiences with other cases completely out of mind in assessing whether a verdict of death should be modified. The argument loses its lustre, however, when its premise is expanded to permit the trial court to consider and rely on the actual facts of these other cases when evaluating the jury's penalty determination. Under California law, as we explained above, the trial judge is limited to reweighing the evidence presented to the penalty jury.

The People also observe correctly that the trial court should not have given any weight or consideration to the subsequent procedural histories of these other capital cases in ruling on the section 190.4(e) motion. In its ruling from the bench the judge took particular note that one capital case he presided over "some nine or ten years ago . . . is still on appeal. And every case that the court has tried in which the death penalty has been imposed is still on appeal." The facts related to the subsequent procedural histories of these cases, like the facts of the cases themselves, were not presented to the penalty jury, and should not have been considered by the trial court in ruling on the section 190.4(e) motion. (*People* v. *Burgener, supra,* 223 Cal.App.3d 427, 434 [error for trial court ruling on a section 190.4(e) motion to consider

---

[7]Consequently, we cannot agree with defendant's assertion that the trial court's lengthy discussion of these other cases was merely prefatory to its reconsideration of the aggravating and mitigating factors, and thus, that no error occurred. The colloquy at the hearing on the motion makes clear that the trial court took the facts of these other cases into account in ruling on the section 190.4(e) motion, even though the subsequent minute order was silent on the point. (*People* v. *Gonzalez* (1990) 51 Cal.3d 1179, 1239 [275 Cal.Rptr. 729, 800 P.2d 1159] [where conflict between minute order and oral statement on record the latter controls].) Therefore, the statutory (Evid. Code, § 664) and judicial presumptions (*People* v. *Lang, supra,* 49 Cal.3d 991, 1044) that a judge performed his duties in accordance with law are inapposite as they are rebutted by the record.

"1) the possibility the jury could not, as it was instructed, ignore the successfully objected-to evidence at the trial, 2) a 'most likely' reversal by the Supreme Court, and 3) the length and expense of a retrial of the penalty phase."].) These facts are irrelevant in any event as they have no tendency to prove or disprove one of the statutory aggravating or mitigating factors.

 ██ Turning now to the issue whether these errors require reversal, the parties note that the Supreme Court has not had occasion to specify a test for prejudice where error occurs in connection with the granting of a section 190.4(e) motion.[8] In the one reported case where such error occurred, *People v. Burgener, supra,* 223 Cal.App.3d 427, 435, the Court of Appeal declined to specify a test, concluding that the trial court's consideration of factors not presented to the penalty jury "was not harmless under any standard as to the People."[9]

Although the Supreme Court has not specified a test of prejudice where error occurs in the granting of a section 190.4(e) motion, it has provided some guidance recently by specifying the test of prejudice where the trial court errs by considering improper evidence before *denying* a section 190.4(e) motion. The court has adopted a standard that reviews such error "under the so-called 'reasonable possibility' test—i.e., is there a reasonable possibility that the error affected the decision?" (*People v. Benson* (1990) 52 Cal.3d 754, 812 [276 Cal.Rptr. 827, 802 P.2d 330], citing *People v. Ramirez* (1990) 50 Cal.3d 1158, 1202 [270 Cal.Rptr. 286, 791 P.2d 965]; *People v. Frierson* (1991) 53 Cal.3d 730, 751-752 [280 Cal.Rptr. 440, 808 P.2d 1197].) This reasonable possibility test appears to be based on the *Chapman* harmless error test, under which federal constitutional error will not be deemed harmless unless it is harmless beyond a reasonable doubt.[10] (See *People v. Heishman* (1988) 45 Cal.3d 147, 201 [246 Cal.Rptr. 673, 753 P.2d 629]

---

[8] Where no error occurs, the Supreme Court independently reviews the ruling on the section 190.4(e) motion. This standard was specified recently in *People v. Mickey* (1991) 54 Cal.3d 612, 704 [286 Cal.Rptr. 801, 818 P.2d 84], where Justice Mosk wrote: "On appeal, we subject a ruling on such an application to independent review: the decision resolves a mixed question of law and fact; a determination of this kind is generally examined de novo (see generally *People v. Louis, supra,* 42 Cal.3d at pp. 984-988). Of course, when we conduct such scrutiny, we simply review the trial court's determination after independently considering the record; we do not make a de novo determination of penalty." (Accord *People v. Ashmus* (1991) 54 Cal.3d 932, 1006-1007 [2 Cal.Rptr.2d 112, 820 P.2d 214].)

[9] Despite its reluctance to specify a controlling standard of review, the *Burgener* court's conclusion that "there is a reasonable probability that the court's determination would have been different absent such error" (*People v. Burgener, supra,* 223 Cal.App.3d at p. 435) suggests that the court applied the *Watson* test for prejudice. (*People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

[10] *Chapman v. California* (1966) 386 U.S. 18, 22-24 [17 L.Ed.2d 705, 87 S.Ct. 824, 709-711, 24 A.L.R.3d 1065]. In *Chapman,* the court equated the two tests: "There is little, if any, difference between our statement in *Fahy v. Connecticut* [(1963) 375 U.S. 85, 86-87]

[arguendo application of *Chapman* test using "reasonable possibility" language].)

Defendant proposes this test applies as well to assessing whether error in the granting of a section 190.4(e) motion was prejudicial.[11] Applying the test, he contends there is not a reasonable possibility that the trial judge's consideration of the improper factors in the present case affected the outcome. In support of this position defendant relies on Supreme Court cases holding that the trial court's consideration of improper information or evidence in ruling on a section 190.4(e) motion was harmless error. The most typical errors include consideration of the probation report (*People* v. *Adcox* (1988) 47 Cal.3d 207, 272 [253 Cal.Rptr. 55, 763 P.2d 906]; *People* v. *Lang, supra,* 49 Cal.3d 991, 1042-1045; *People* v. *Ramirez, supra,* 50 Cal.3d 1158, 1201-1202; *People* v. *Douglas* (1990) 50 Cal.3d 468, 539-540 [268 Cal.Rptr. 126, 788 P.2d 640]; *People* v. *Whitt* (1990) 51 Cal.3d 620, 659-661 [274 Cal.Rptr. 252, 798 P.2d 849]; *People* v. *Medina* (1990) 51 Cal.3d 870, 912 [274 Cal.Rptr. 849, 799 P.2d 1282]; *People* v. *Gonzalez, supra,* 51 Cal.3d 1179, 1237-1239; *People* v. *Benson, supra,* 52 Cal.3d 754, 811-813), consideration of victim impact evidence (*People* v. *Jennings, supra,* 46 Cal.3d 963, 994-995; *People* v. *Frank* (1990) 51 Cal.3d 718, 742 [274 Cal.Rptr. 372, 798 P.2d 1215]; *People* v. *Benson, supra,* 52 Cal.3d 754, 811-813; but see *Payne* v. *Tennessee* (1991) 501 U.S. __, __ [115 L.Ed.2d 720, 736, 111 S.Ct. 2597] [victim impact evidence not barred per se by Eighth Amendment], *People* v. *Edwards* (1991) 54 Cal.3d 787, 883 [1 Cal.Rptr. 696, 819 P.2d 436 [victim impact evidence admissible under Pen. Code, § 190.3, factor (a)]); counting the absence of a mitigating factor as an aggravating factor, in violation of *People* v. *Davenport* (1985) 41 Cal.3d 247, 288-290 [221 Cal.Rptr. 794, 710 P.2d 861] (*People* v. *Brown* (1988) 46 Cal.3d 432, 456, 462 [250 Cal.Rptr. 604, 758 P.2d 1135]; *People* v. *Karis* (1988) 46 Cal.3d 612, 651-652] [250 Cal.Rptr. 659, 758 P.2d 1189]; *People* v. *Adcox, supra,* 47 Cal.3d at p. 272;

---

about 'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction' and requiring the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." (386 U.S. at p. 24 [17 L.Ed.2d at p. 710].)

[11]We question defendant's assumption that the People are entitled to a reversal upon showing that there is a reasonable possibility that an error may have affected the decision to grant the motion. Unlike *Chapman* and its progeny, the error here is not of constitutional dimension as to the People, and a less exacting standard of review usually applies to a People's appeal from an order granting a reduction of punishment in lieu of granting a new trial motion. (Cf. *People* v. *Sheran* (1957) 49 Cal.2d 101, 109 [315 P.2d 5] [specifying the People's burden for obtaining reversal of order reducing class of crime based on insufficiency of the evidence], cited with approval in *People* v. *Moore* (1960) 53 Cal.2d 451, 454 [2 Cal.Rptr. 6, 348 P.2d 584] [punishment reduction case]; but see cases cited in fn. 8, *ante,* in which the Supreme Court implied that more exacting independent review applies to *all* rulings on section 190.4(e) motions.)

*People v. Hamilton, supra,* 48 Cal.3d 1142, 1186-1187; *People v. Whitt, supra,* 51 Cal.3d 620, 660; *People v. Marshall, supra,* 50 Cal.3d 907, 944-945; *People v. Kaurish* (1990) 52 Cal.3d 648, 716-718 [276 Cal.Rptr. 788, 802 P.2d 278]; *People v. Daniels* (1991) 52 Cal.3d 815, 892-893 [277 Cal.Rptr. 122, 802 P.2d 906]), or failing to state any reasons for denying the motion (*People v. Heishman, supra,* 45 Cal.3d 147, 199-203; *People v. Hernandez, supra,* 47 Cal.3d 315, 371-374; *People v. Allison, supra,* 48 Cal.3d 879, 909-912).

It is true that in each of these cases any error was deemed harmless. These cases are distinguishable, however. In *Benson, Douglas, Frank, Gonzalez, Jennings, Karis, Lang, Marshall, Medina, Ramirez,* and *Whitt* the Supreme Court concluded the record established the trial court placed little if any reliance on the improper material. In *Adcox, Allison, Brown, Daniels, Hamilton, Heishman, Hernandez,* and *Kaurish,* the Supreme Court concluded that any error was ameliorated because the aggravating factors substantially outweighed the mitigating factors.

In the present case, by contrast, the trial court extensively relied on improper considerations, and it cannot be said that the mitigating factors substantially outweighed the aggravating factors, if they outweighed them at all.[12] After discussing in general terms the circumstances of defendant's crime, and in fact concluding that the prosecution had proven the first degree murder with special circumstances true beyond a reasonable doubt, the court turned its focus to the facts of the other capital cases to assess whether the death penalty was warranted. In concluding these facts disclosed "something in addition," the court implicitly reduced the weight of the principal aggravating factor in this case, namely, "[t]he circumstances of the crime of which the defendant was convicted in the present proceeding and the existence of any special circumstances found to be true . . . ." (Pen. Code, § 190.3.) By essentially disregarding the callous and gruesome nature of the victim's execution, the court not only reduced the principal aggravating factor to a virtual nullity, but also necessarily increased the weight accorded the mitigating evidence.

Since the trial court relied on the improper information and the mitigating factors do not substantially outweigh the aggravating factors, this case does not appear to be susceptible to the type of harmless error analysis conducted by the Supreme Court in the aforecited cases. In fact, when faced with similar circumstances, the Supreme Court has indicated the correct procedure is to remand the case for the limited purpose of having the trial judge reconsider the section 190.4(e) motion without reference to the improper

---

[12]Indeed, a review of the cases just cited reveals that the mitigating evidence of the type presented by defendant herein is usually accorded little weight by our high court.

information. (*People* v. *Lewis* (1990) 50 Cal.3d 262, 287 [266 Cal.Rptr. 834, 786 P.2d 892] [remand due to trial judge's reliance on probation report containing "prejudicial information about defendant's juvenile record and prior involvement in a homicide"].) The court has also followed this course when the trial judge failed to state any reason for denying the motion (*People* v. *Sheldon* (1989) 48 Cal.3d 935, 962-963 [258 Cal.Rptr. 242, 771 P.2d 1330]; *People* v. *Brown* (1988) 45 Cal.3d 1247, 1263 [248 Cal.Rptr. 817, 756 P.2d 204]; *People* v. *Rodriguez, supra,* 42 Cal.3d 730, 794; but cf. *People* v. *Heishman, supra,* 45 Cal.3d 147, 199-203 [harmless error analysis undertaken despite absence of statement of reasons because judge had died and reasons were "self-evident"].) Remand for reconsideration was also ordered where the trial judge failed to make the required independent determination whether the weight of the evidence supported the jury's penalty determination. (*People* v. *Rodriguez, supra,* 42 Cal.3d at pp. 793-794.)[13] We believe a like result should obtain here, particularly since

---

[13]At argument we requested the parties brief the issue whether, in the event we were to remand for reconsideration of the section 190.4(e) motion, it would be appropriate for this court to direct that another judge entertain the motion, pursuant to Code of Civil Procedure section 170.1, subdivision (c), which provides: "At the request of a party or on its own motion an appellate court shall consider whether in the interests of justice it should direct that further proceedings be heard before a trial judge other than the judge whose judgment or order was reviewed by the appellate court."

We raised this issue due to a concern that the trial judge might be unable to disregard the improper factors we have identified herein. Although the cases cited in the text indicate that remand to the same judge is the preferred procedure in the case of section 190.4(e) error, it does not appear that these decisions had occasion to consider, let alone reject, application of Code of Civil Procedure section 170.1, subdivision (c), which was added in 1984. Consequently, we do not believe these cases *require* remand to the same trial judge where "the interests of justice" suggest that a different judge should hear the motion. (*In re Tartar* (1959) 52 Cal.2d 250, 258 [339 P.2d 553] [cases are not authority for propositions not considered]; accord *People* v. *Dillon* (1983) 34 Cal.3d 441, 473-474 [194 Cal.Rptr. 390, 668 P.2d 697]; cf. *People* v. *Lewis, supra,* 50 Cal.3d 262, 287 [§ 190.4(e) motion need not be heard by the same judge on remand]; *Clemons* v. *Mississippi, supra,* 494 U.S 738, 746-747 [108 L.Ed.2d 725, 736-737] [Eighth Amendment does not require, after a finding of error, that reweighing of aggravating and mitigating factors be conducted by original sentencing jury or judge].)

The People request that we order the motion be heard by a different judge pursuant to Code of Civil Procedure section 170.1, subdivision (c) as well as our inherent authority to direct that a new judge conduct resentencing on remand. (See, e.g., *People* v. *Swanson* (1983) 140 Cal.App.3d 571, 574 [189 Cal.Rptr. 547] [remand to different judge for resentencing because original sentencing judge appeared to have arbitrarily selected sentence]; *People* v. *Williams* (1986) 180 Cal.App.3d 57, 64-65 [225 Cal.Rptr. 498] [remand to different judge because of numerous sentencing errors].) The People propose that the trial judge's reliance on the improper factors "raises the distinct possibility" that the trial judge "based his decision on his subjective and preconceived determination to impose life without possibility of parole rather than death, regardless of the evidence." The People also argue that the appearance of fairness can be preserved only by remand to a different judge. Should the same judge deny the motion on remand, the argument proceeds, "defendant might feel the sting of the remand had stripped' the judge of his judicial fortitude." Should the same judge grant the motion, "the People and

there is no indication in the record that the trial judge is unavailable to hear the motion.

## Disposition

The penalty judgment is vacated and the cause remanded to the trial court for the limited purpose of redetermining the automatic modification motion pursuant to section 190.4(e). If the trial court, upon application of the

the victim's family might perceive an inability or unwillingness on the judge's part to disassociate himself from the errors which warranted a remand in the first place."

Defendant responds that in every case remanded for reconsideration of the section 190.4(e) motion, the higher court has indicated that the same trial judge should hear the motion if possible. Defendant, recognizing that these cases have not expressly stated any reason for same-judge remand, infers that it has been ordered because the judge who was present at the guilt and penalty phases would be in the best position to assess the credibility and weight of the evidence presented to the jury, and thus, to decide again the section 190.4(e) motion. Defendant also contends that judicial economy favors same-judge remand. Finally, defendant argues that the trial judge herein indicated neither "an animus inconsistent with judicial objectivity" nor "a whimsical disregard" of his duties under section 190.4(e) so as to justify remand to a different judge under Code of Civil Procedure section 170.1, subdivision (c). (See *People* v. *Gulbrandsen* (1989) 209 Cal.App.3d 1547, 1562 [258 Cal.Rptr. 75].)

Upon review of these arguments we decline to exercise our power to direct that the motion be heard by a different judge. We agree with the *Gulbrandsen* court that "the statutory power of appellate courts to disqualify sentencing judges should be used sparingly and only where the interests of justice require it." (*People* v. *Gulbrandsen, supra,* 209 Cal.App.3d 1547, 1562.) On the record before us we cannot accept the People's assertion that the trial judge based his determination to modify the death verdict on his subjective and preconceived view as to the appropriate penalty regardless of the evidence. Rather, as we have explained above, the judge's determination appears based more on his extensive reliance on improper extraneous matters. Furthermore, remand to a different judge is not warranted due simply to the possibility that one side or the other may feel unfairly treated. The same possibility exists whenever a case is remanded for resentencing, yet the courts have routinely declined to require a different judge to conduct resentencing except in extraordinary circumstances. (*People* v. *Hunter* (1986) 184 Cal.App.3d 1531, 1537 [229 Cal.Rptr. 330] [remand to same judge despite sentencing errors]; *People* v. *Bobb* (1989) 207 Cal.App.3d 88, 98 [254 Cal.Rptr. 707] [same]; *People* v. *Gulbrandsen, supra,* 209 Cal.App.3d 1547, 1563 [same]; but see *People* v. *Kaanehe* (1977) 19 Cal.3d 1, 12-13, 15 [136 Cal.Rptr. 409, 559 P.2d 1028] [prosecutor argued extensively for upper term in violation of plea bargain agreement to withhold argument; remand to different judge since it was unlikely "that any judge, however objective and disciplined he may be, can wholly remove from consideration in resentencing defendant the matters improperly communicated to him by the prosecutor"]; *People* v. *Stanley* (1984) 161 Cal.App.3d 144, 156 [207 Cal.Rptr. 258] [remand to different judge for resentencing ordered after original judge improperly relied on highly adverse and unreliable "sexual abuse team" report].) We also agree with defendant that the trial judge is in the best position to conduct the requisite reweighing under section 190.4(e), and that this seems to be the most likely reason why the Supreme Court has specified that same-judge remand is the preferred disposition. Therefore we decline to remand the matter to a different judge.

We note, however, that if the trial judge believes that he may be unable to disregard the improper factors identified herein in fulfilling his duties under section 190.4(e) motion, he retains the power to disqualify himself under Code of Civil Procedure section 170.1,

appropriate standards, denies the motion, it shall reinstate the judgment of death. If it grants the application, it shall enter a judgment of life without possibility of parole. The trial judge should rehear the motion personally, on the basis of the record certified to this court. If, however, he is unavailable, the motion may be heard before another judge of the same court. (*People* v. *Lewis, supra,* 50 Cal.3d 262, 287; *People* v. *Sheldon, supra,* 48 Cal.3d 935, 963; *People* v. *Brown, supra,* 45 Cal.3d 1247, 1264, fn. 7.)

Premo, J., and Bamattre-Manoukian, J., concurred.

Respondent's petition for review by the Supreme Court was denied March 26, 1992. George, J., was of the opinion that the petition should be granted.

---

subdivision (a)(6), which provides in part that a judge shall be disqualified if "[f]or any reason (A) the judge believes his or her recusal would further the interests of justice, (B) the judge believes there is a substantial doubt as to his or her capacity to be impartial, or (C) a person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial." (See also *People* v. *Charles* (1967) 66 Cal.2d 330, 338, fn. 12 [57 Cal.Rptr. 745, 425 P.2d 545]; *People* v. *Vanbuskirk* (1976) 61 Cal.App.3d 395, 407, fn. 9 [132 Cal.Rptr. 30].)