[No. F003003. Fifth Dist. Oct. 24, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH CARL STANLEY, Defendant and Appellant.

COUNSEL

John Francis Bowman, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, W. Scott Thorpe, Shirley A. Nelson and Nancy Sweet, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**ANDREEN, Acting P. J.**—Following a plea to and sentence for a violation of Penal Code[1] section 288, subdivision (a) (lewd and lascivious act upon a minor child) defendant appeals, contending that the court considered inadmissible data during the sentencing proceedings.

## I. FACTS

According to the probation officer's report, filed with the trial court on July 18, 1983, an investigation of possible child abuse (prompted by observation by school officials of bruises on the victim, defendant's eight-year-old daughter) resulted in discovery that defendant had, on three occasions over the preceding three years, placed his penis between the buttocks of his daughter. The report further indicated that defendant had been the victim of abuse as a child, and that at the time of his arrest he was a noncommissioned officer in the Air Force with an outstanding record of service. The report cited an unidentified "spokesman from Child Protective Services" as having stated that "a medical report notes anal penetration did occur," although defendant denied that any such penetration had occurred. The probation officer noted as circumstances in aggravation that the victim was particularly vulnerable and that defendant had taken advantage of a position of trust to commit the offense, and asserted that there were "[n]o circumstances in mitigation." Notwithstanding this seemingly unfavorable recitation, the report recommended that a diagnostic study be ordered pursuant to section 1203.03.

On July 18, 1983, the trial court ordered that defendant be placed in the diagnostic facility at Vacaville, California, and that the Department of Corrections submit a report, all pursuant to section 1203.03. A "Diagnostic Study and Recommendation" dated August 27, 1983, was prepared by the

---

[1]All further statutory references are to the Penal Code.

Department of Corrections and submitted to the court; it recommended, inter alia, that defendant "be considered for probation" in connection with local jail confinement and mandatory outpatient psychotherapy. The "Study" consisted of evaluations by a counselor and a staff psychologist; the former, although stating that defendant "admitted remorse and responsibility for the offense" and omitting any specific discussion of factors militating for or against probation, recommended that defendant be imprisoned.

The psychologist's report was much lengthier and contained greater detail about defendant's abuse as a child at the hands of his parents. This study concluded that defendant: "is a very confused and significantly remorseful man who has been overwhelmed by his situation and does not have the insight or understanding of what has happened to him, either in his early life or currently. He is . . . motivated at the present time to get treatment in order to better understand his behavior. He is ashamed and in a good deal of emotional distress. . . . Inasmuch as he has had no previous convictions, is not criminally inclined, is generally able to adapt productively to society and does not appear to be a threat to other than the victim, a suspended Department of Corrections sentence is being made [sic]." The psychologist's study further recommended county jail time, no unsupervised contact with the victim, and treatment. The "Reasons for Recommendation" portion of the Department of Corrections' report indicated that the differences in opinion between the counselor and the psychologist had been submitted to a five-person "group staffing conference," and that they reached the ultimate recommendation in favor of probation with conditions by a vote of three to two.

On August 26, 1983, the probation department requested and was granted a continuance to prepare a supplemental report. The supplemental report consisted of a letter to the trial court dated August 29, 1983, in which the probation officer stated that "defendant should be sent to the Department of Corrections for the following reasons. The defendant denied penetration but a medical report confirms anal penetration did occur. A spokesman for Child Protective Services also noted the defendant failed to follow through with individual and group therapy as recommended. Neither did the defendant make arrangements to meet with his daughter and wife during the time it was hoped family reunification was possible.

"· · · · · · · · · · · · · · · · · · · ·

". . . Due to the circumstances and time duration [sic] of the offense, and the defendant's need for intensive psychotherapeutic counseling, together with punishment for the offense, it is recommended that he be committed to the California Department of Corrections."

At the hearing on the Department of Corrections' recommendation and study on August 31, 1983, the trial court expressed uncertainty as to the proper disposition to be made. The prosecutor repeated the assertion of the probation department that "the doctor says anal penetration takes place. We have medical evidence here it did take place." After further discussion indicating that the court was having a very difficult time deciding whether to grant probation or imprison defendant, the court said: "Mr. [probation officer], in one previous case, we went to this Sexual Abuse Child Team [sic] and asked them if there were some program at the local level for anybody or was it just there was no program available in that case? Do you remember?" When the probation officer stated that he was unsure what the "team's" activities involved, the court continued: "I hate to prolong the agony, but it's a serious thing, and it's not simply a matter of following the recommendation A or recommendation B. And I will ask the probation office to check with that team, continue the matter until Friday morning of this week."

The report of the "Child Sexual Abuse Treatment team" was transmitted to the court in letter form on the stationery of the Merced County Department of Human Resources. The letter recited: "[a]s the Court is aware, the Treatment team is a group of individual professionals from various City and County agencies working in the area of intervention and prevention of child sexual abuse. These areas include, [sic] investigations, social services, mental health counseling and therapy. The Treatment team was organized to assist in dealing more effectively in all phases in child sexual abuse cases." The "members" listed as having participated in the consideration of the matter referred by the court included three social workers from the county department of human resources, a social worker from the county department of mental health, a police detective, a sheriff's employee, a "[c]ounselor" from "The Bridge Agency," one each additional representative of the county agencies, and a "[c]onsulting [s]ocial [w]orker" (Shirley Corbin, who was identified in the report of the probation officer as a child protective services worker).

The report consists of a series of unsupported factual allegations concerning defendant and the charged offense, followed by a recommendation that defendant be incarcerated "in state prison for the maximum term . . . ." The report recited that the team had been given an "oral summarization of the case" by the consulting social worker, from which "the team discerned that [defendant] showed no signs of remorse for his actions nor did he display any realization of the trauma that he inflicted upon the child. [Defendant] did not display any feelings that his acts upon the child were wrong; only that these acts were socially unacceptable. Even after admission of these acts he displayed nothing that would support a belief that he per-

sonally felt these acts were morally wrong or psychologically damaging to the child." The report concluded that "[t]he behavior patterns of [defendant] . . . will not change and [he] will continue to be a threat to his child, other children and the community as a whole." There is nothing in the report to indicate that it had available the diagnostic study,[2] and it is obvious that, other than child protective services worker Shirley Corbin, the team members did not interview the defendant.

At the outset of the continued hearing on September 2, 1983, defense counsel informed the court that she had just received a copy of the report of the "Sexual Abuse Treatment team" and had not had an opportunity to review it. The court responded: "Well, to put it bluntly, I think the Court learned more from this letter than from the probation officer's report. Maybe we're being told something, maybe I'm being told something, at any rate, by that, I wish I had as complete a report as this in the last case like this." Defense counsel then objected to the court's consideration of the report, noting (1) the defense was not permitted to participate in the preparation of the report, (2) there is no indication of what training the team had, (3) the team had no authority to make recommendations, (4) there was no indication as to how involved the various members of the team had been in defendant's case, and (5) the team may have been biased in favor of incarceration.

Without specifically ruling on the defense objections, the court proceeded to recite various considerations bearing upon its decision, juxtaposing references to the Department of Corrections' diagnostic study with citations from the sexual abuse team letter. The court concluded: "But, with the information with regard to the relative instability, the regression and the probabilities of danger to others, the Court simply doesn't see how a jail commitment or probation would be the appropriate response in this case. And I confess to being vastly troubled by these cases. And this is the second one this week."

After soliciting comments from the attorneys regarding the length of sentence to be imposed, the court discussed aggravating and mitigating factors, including victim vulnerability, position of trust (aggravating), and no prior record (mitigating). The court rejected acknowledgment of guilt as a mitigating factor because there was no "voluntary acknowledgment of wrongdoing prior to arrest." Finally, the court stated, "[T]here are circumstances present in this case that were not present in the preceding case which is my

---

[2]The diagnostic study is confidential and absent the consent of the defendant may not be disclosed to other than the defendant or his counsel, the probation officer and the prosecuting attorney. (§ 1203.03, subd. (b).) There is no record of the defendant being asked for his consent to show the report to the sexual abuse team.

current basis for measurement of consistency." A sentence of six years in state prison was then imposed.

## II. Did the Trial Court Err by Considering as Part of the Sentencing Process the Letter Report by the Child Sexual Abuse Treatment Team?

Defendant argues that it was improper for the trial court to consider the report of the child sexual abuse treatment team. The People contend that consideration of the challenged report was authorized by statute.

There is a distinction between what a judge may substantively consider in making his/her determination of the sentence to be imposed, and the procedure by which that information is presented. There is a further distinction between provision of facts and making recommendations as to disposition.

The scope of information a sentencing court may consider is very broad, and includes the circumstances surrounding the crime and facts relating to the defendant which are not directly connected to commission of the crime for which he is being sentenced. (See *People* v. *Cheatham* (1979) 23 Cal.3d 829, 835-836 [153 Cal.Rptr. 585, 591 P.2d 1237]; *People* v. *Warner* (1978) 20 Cal.3d 678, 684-688 [143 Cal.Rptr. 885, 574 P.2d 1237]; and see § 1203, subd. (b); Cal. Rules of Court, rules 408(a), 414, 419, 421, 423, 425, 433(c), 437.)

With regard to the manner or form by which such information is brought before the court, "[f]undamental fairness requires that information used by the court in a matter as serious as [a defendant's] commitment to prison be reliable [citation] and be available not just in conclusionary form. Its reliability should be subject to critical examination by a defendant whose liberty is about to be admeasured." (*People* v. *York* (1980) 108 Cal.App.3d 779, 791 [166 Cal.Rptr. 717].) " '[A]n applicant for probation is . . . entitled to relief on due process grounds if the hearing procedures are *fundamentally unfair.*' [Citation.] Reliability of the information considered by the court is the key issue in determining fundamental fairness." (*People* v. *Arbuckle* (1978) 22 Cal.3d 749, 754-755 [150 Cal.Rptr. 778, 587 P.2d 220, 3 A.L.R.4th 1171].)

The code and rules contain some specificity. The general rule is stated in section 1204: "The circumstances shall be presented by the testimony of witnesses examined in open court, except that when a witness is so sick or infirm as to be unable to attend, his deposition may be taken by a magistrate of the county, out of court, upon such notice to the adverse party as the

court may direct. No affidavit or testimony, or representation of any kind, verbal or written, can be offered to or received by the court, or a judge thereof, in aggravation or mitigation of the punishment, except as provided in this and the preceding section. This section shall not be construed to prohibit the filing of a written report by a defendant or defendant's counsel on behalf of a defendant if such a report presents a study of his background and personality and suggests a rehabilitation program. If such a report is submitted, the prosecution or probation officer shall be permitted to reply to or to evaluate the program."

In reference to this section, the court in *People* v. *Surplice* (1962) 203 Cal.App.2d 784, 792 [21 Cal.Rptr. 826], stated: "What a judge may receive to influence his decision as to what sentence is to be imposed on a convicted defendant is strictly limited by statute. (Pen. Code, § 1204.)"

Exceptions to the rule stated in section 1204 are sprinkled through the code and rules. When a judgment of imprisonment is to be imposed, "[i]n determining whether there are circumstances that justify imposition of the upper or lower term, the court may consider the record in the case, the probation officer's report, *other reports* including reports received pursuant to Section 1203.03 and statements in aggravation or mitigation submitted by the prosecution or the defendant, and any further evidence introduced at the sentencing hearing." (§ 1170, subd. (b), italics added.) Although the statute by its terms applies to the selection of a term of imprisonment, not to the decision whether to impose imprisonment at all, it may be taken as a legislative statement of what forms of evidence may be considered by a judge during any part of the sentencing process. The words "other reports" have not been analyzed by any reported case. The Legislature utilized the general words "other reports" in order to facilitate the consideration of data from sources other than those listed. However, the information in the report must be reliable in order to meet the fairness test in *People* v. *Arbuckle, supra,* 22 Cal.3d 749.

In reference to cases in which a minor is a victim of child abuse, the Legislature has made a clear declaration as to which "reports" are sufficiently reliable to influence the sentencing decision. Section 1203h provides: "If the court initiates an investigation pursuant to subdivision (a) or (d) of Section 1203 and the convicted person was convicted of violating any section of this code in which a minor is a victim of an act of abuse or neglect, then the investigation may include a psychological evaluation to determine the extent of counseling necessary for successful rehabilitation and which may be mandated by the court during the term of probation. Such evaluation may be performed by psychiatrists, psychologists, or licensed clinical social

workers. The results of the examination shall be included in the probation officer's report to the court."

The sentencing court's referral to the sexual abuse team, for the stated purpose of discovering whether there was a treatment program "at the local level," would necessarily entail a consideration of the object of a section 1203h investigation: ". . . the extent of counseling [of the defendant] necessary for successful rehabilitation . . .," since the existence of a treatment program assumes significance only if the defendant can be treated. In fact, the sexual abuse team report contained an unequivocal conclusion as to defendant's amenability to rehabilitation—that his "behavior patterns . . . will not change"—although nothing therein suggests that any member possessed the qualifications mandated by statute to make such an evaluation.[3] ▆▆ Unlike the Department of Corrections section 1203.03 report challenged in *Arbuckle,* which the Supreme Court held inherently reliable "because it was made pursuant to a court order by expert, objective government personnel in pursuit of their official duties," (*People* v. *Arbuckle, supra,* 22 Cal.3d at p. 755) the sexual abuse team's "evaluation" of defendant was produced by an ad hoc group of both government employees and private individuals, operating outside their official capacities, with regard to issues largely outside their apparent areas of expertise. A diagnostic study such as was performed in *Arbuckle* and by the Department of Corrections in the present case involves a lengthy observation of the defendant, including extensive psychological testing, by persons whose official duties include the making and reporting of such evaluations to sentencing courts. (Defendant was at the Vacaville facility for approximately 30 days.) The sexual abuse team report was made by local social service, law enforcement and other personnel, over a very short period, and without an opportunity to observe and evaluate the defendant. Under these circumstances, it was error for the trial court to consider the report of the Child Sexual Abuse Treatment team.

The People assert that the sexual abuse team report is authorized by California Rules of Court, rule 419(a)(7), which provides that the probation officer's presentence investigation report shall include: "[¶] (7) Collateral information, including written statements from: (i) official sources such as defense and prosecuting attorneys, police (subsequent to any police reports used to summarize the crime), probation and parole officers who have had prior experience with the defendant, and correctional personnel who observed the defendant's behavior during any period of presentence incarcer-

---

[3] Although the Legislature employed the word "may" in section 1203h before listing the types of professionals permitted to make the rehabilitation evaluation, the language and context of the operant phrase unmistakably *exclude* persons less qualified.

ation; and (ii) interested persons, including family members and others who have written letters concerning the defendant." The People argue that the sexual abuse team report qualifies as either a written statement from an official source or from "interested persons." The difficulty with the argument is that the information from the sexual abuse team was meant to be and was treated as anything but collateral. It was therefore mandatory that it have indicia of fairness.

Furthermore, there is good reason to require such collateral information to be included *in the probation officer's report.* Although letters from relatives, etc., can be expected to be subjective, other information should be sifted by the probation officer before consideration by the court.

A probation officer usually has a great deal of expertise, which permits him/her to evaluate the competency of sources of information and the weight to be accorded it. Also, the report is made available to the court and attorneys at least nine days prior to the sentencing hearing. (§ 1203, subd. (b).) This requirement gives the prosecuting and defense attorneys time to study and evaluate the report and to obtain any information necessary for refutation. This time requirement is deemed so important that it may be waived only by written stipulation or oral stipulation made in open court and entered upon the minutes of the court. (*Ibid.*) As noted earlier, the report of the sexual abuse team was not included in the probation officer's report. This precluded an evaluation of the reliability and weight to be accorded it and gave defense counsel no time to challenge its contents.[4]

The team report is further weakened by the fact that only one of the members had any opportunity to talk to the defendant. Most professionals called upon to make a diagnosis or prognosis examine, talk to, or observe the subject. We note that rather than a presentation of factual information, the challenged report contains sociological and psychological conclusions of questionable factual antecedents.

The team concluded (1) based upon defendant's use of euphemisms in place of "penis" and "vagina," he felt no guilt or responsibility for his sexual abuse of his daughter, and would continue to justify such actions; (2) based upon "prior studies and writings on sociopathic behavior," the team concluded that defendant's behavior was not amenable to modification or alteration by therapy "and probation"; (3) based upon an "oral summarization of the case" by a social worker, the team concluded that de-

---

[4]We regard the timing of presentation of the sexual abuse team report to defendant as a serious error independent of its failings vis-à-vis section 1203h and its unreliability, but do not focus upon the lack of notice in view of the more fundamental substantive errors.

fendant showed no remorse, displayed no realization of the harm he had done his daughter, and failed to demonstrate that he believed his actions were morally objectionable; and (4) based upon the assertion of the social worker and "medical records from Castle Air Force Base that indicate suspected molestation as early as age 3 [of the victim]," the team concluded that "this pattern of molestation indicates an ingrained behavior pattern on the part of [defendant] that is not likely to be changed."

The sexual abuse team report conflicts factually with the probation report and the Department of Corrections' study in ways that undermine its reliability. Although the child protective services worker "met with the victim" and found her to be "quite outgoing" and expressing "no undue fears of either of her parents," the sexual abuse team report states that "[t]he mental health therapist advised the team that the child displays enormous anger towards [defendant], has 'severe sexual hang ups [sic],' . . . 'is not your average, bubbly 8 year old [sic] girl, and has suffered immense trauma, both physical and mental, by [defendant's] actions.'" Both portions of the Department of Corrections' study (by a counselor and a psychologist) reported that defendant "admitted remorse and responsibility," and was "significantly remorseful," yet the sexual abuse team letter stated that "the team discerned that [defendant] showed no signs of remorse . . . nor did he display any realization of the trauma that he inflicted upon the child."

The psychologist's portion of the Department of Corrections' study concluded that defendant "is not criminally inclined, is generally able to adapt productively to society and does not appear to be a threat to other than the victim . . . ." The sexual abuse team asserted that defendant "will continue to be a threat to his child, other children, and the community as a whole." The team recommended "state prison for the maximum term" and implied that a less harsh recommendation would have been made if defendant had "displayed remorse or desires to change the behavior . . . ."

We note that the Legislature has assigned to the probation officer (§ 1203, subd. (b)) and the Department of Corrections (§ 1203.03) the weighty responsibility of making recommendations to the court as to disposition. There is nothing in section 1170, subdivision (b) or in California Rules of Court, rule 419(a)(7) which authorizes a court to delegate this responsibility to others.

The American Bar Association Standards for Criminal Justice (2d ed. 1980) Sentencing Alternative and Procedures, Standard 18-5.1(c) provides that "[a]ll material information in the presentence report should be factual and verified by the preparer of the report. The preparer of the report should be available to answer questions at the presentence conference provided for

in standard 18-5.5(b) and, if challenged on the issue of verification, should have the responsibility of establishing sufficient verification. Failure to establish sufficient verification should result in the refusal of the court to consider the challenged information at the sentencing hearing . . . ."[5] (*Id.*, at p. 333.) The commentary to the standard notes that much of the unreliability of information contained in presentence reports arises from the fact that prosecution records are a primary source for such reports, and that such sources "generally make little effort to distinguish unsupported allegations from those having some indicia of reliability." (*Id.*, Commentary to Standard 18-5.1, p. 345.)

As indicated above, no reported decision of the courts of this state has assessed the "reliability" in the *Arbuckle* sense of a report not prepared by the probation officer or the Department of Corrections or involving such stark contrasts in factual presentation and psychological conclusions among various sources of information to the sentencing court. The fact that the sexual abuse team report was prepared on short notice, apparently in a single session, and contains sweeping generalizations about defendant's behavior as a parent and unsupported allegations of prior sexually abusive conduct, as well as other factual assertions in complete contradiction to the Department of Corrections' study, raises significant doubts about the report's reliability. The report made extremely damning assertions about the defendant's lack of display of remorse and acknowledgment of guilt, but it is apparent from a reading of the report only one team member ever interviewed defendant. We thus conclude that it was error for the trial court to consider the sexual abuse team report because of its unreliability and independent of whether or not the initial order soliciting such a report was proper.

■ We turn to a discussion of whether the trial court's error in ordering and considering the sexual abuse team report was prejudicial.

In the present case the court had quite evidently been in a quandary as to the proper disposition of defendant, concerned about the seriousness of the offense but obviously moved by defendant's own childhood abuse and impressed by defendant's outstanding record of military service. The probation office, despite originally recommending the 90-day diagnostic study, and after that study had itself recommended probation with local jail time, had come out in favor of imprisonment. Balanced on a knife edge, receipt of the extremely adverse sexual abuse team report, which the court expressly

---

[5]*People* v. *Arbuckle, supra,* 22 Cal.3d 749 held that a defendant may not subpena the makers of a diagnostic study submitted pursuant to section 1203.03 because the studies are reliable and due to the administrative inconvenience of requiring Department of Corrections personnel to appear in court.

praised as being more informative and complete than the probation officer's report, tipped the court in favor of state prison in its sentencing decision. Fairness and the appearance of fairness require that defendant be resentenced without consideration of the sexual abuse team report.

### III. CONCLUSION

The judgment of the trial court with respect to the sentence imposed (only) is reversed. In all other respects the judgment is affirmed. The matter is remanded for resentencing by a different judge. (*People* v. *Kaanehe* (1977) 19 Cal.3d 1, 15 [136 Cal.Rptr. 409, 559 P.2d 1028].) The court will order a supplemental probation report that will include a statement of defendant's performance during imprisonment. (*People* v. *Cooper* (1984) 153 Cal.App.3d 480 [200 Cal.Rptr. 317]; *People* v. *Mariano* (1983) 144 Cal.App.3d 814 [193 Cal.Rptr. 47].)

Woolpert, J., and Hamlin, J., concurred.