Filed 12/14/20

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>THOMAS NOLAN YANAGA,<br><br>    Defendant and Appellant. | 2d Crim. No. B302291<br>(Super. Ct. No. 15F-05954)<br>(San Luis Obispo County) |

Thomas Nolan Yanaga appeals a postjudgment order denying his motion to strike a firearm enhancement after we had remanded the matter for resentencing on the enhancement. We conclude that the trial court prejudicially erred because it was unaware of the scope of its discretionary power. It refused to consider appellant's postjudgment rehabilitative efforts in prison because it mistakenly believed it could consider only information before the original sentencing court. We reverse and remand.

*Procedural Background*

In a nonpublished opinion (*People v. Yanaga* (Sept. 25, 2017, B267571)), we affirmed the judgment entered after a jury had convicted appellant of second degree murder. (Pen. Code §§

187, subd. (a), 189.)[1]  The jury found true an enhancement allegation that he had personally and intentionally discharged a firearm causing death.  (§ 12022.53, subd. (d).)  Appellant was sentenced to prison for an aggregate term of 40 years to life:  15 years to life for second degree murder plus 25 years to life for the firearm enhancement.

The California Supreme Court granted review.  It transferred the matter to us "with directions to vacate [our] decision and reconsider the cause in light of S.B. [Senate Bill No.] 620 (Stats. 2017, ch. 682)."  Senate Bill No. 620 amended subdivision (h) of section 12022.53 to authorize the striking of a firearm enhancement in the interest of justice pursuant to section 1385.

In a second nonpublished opinion (*People v. Yanaga* (May 17, 2018, B267571)), we reversed the trial court's imposition of a 25-year-to-life term for the firearm enhancement.  We concluded that, because appellant's judgment was not final, he was entitled to the benefit of the legislative determination that the previous bar on striking firearm enhancements was too severe.  (See *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 308.)  We remanded the matter for the limited purpose of allowing the trial court to exercise its discretion whether to strike the enhancement in the interest of justice pursuant to sections 12022.53(h) and 1385.  It declined to strike the firearm enhancement.

---

[1] All statutory references are to the Penal Code.

2

*Facts Presented at Trial*

Ashley Moss and appellant were friends. They frequently used methamphetamine together. Moss was living in a spare room in the home of appellant and his wife, Joyce.

Moss and the victim, Marshall Savoy, had a dating relationship. Savoy visited Moss at appellant's home when appellant was present.

On March 13, 2015, Savoy visited Moss at a trailer parked outside appellant's home. He heard appellant and Joyce arguing inside the home. Savoy entered the home and accused appellant of disrespecting his wife.

Joyce testified that Savoy took off his shirt and was trying to provoke appellant, but appellant just "sat there." Savoy threw the shirt at appellant. Appellant said to Savoy in a "stern" voice, "please get off my property." Savoy refused. Appellant repeatedly said to Savoy, "Get out of my house." When Savoy lunged at him, appellant shot Savoy. He told Joyce to call 911.

Moss testified that she saw appellant grab a gun that was on the kitchen island. He inserted a loaded magazine into the gun. With a "happy smirk" on his face, he walked out of the kitchen and said, "'Hey, Marshall.'" Moss could not see appellant and then she heard gunshots. Appellant "yell[ed] at his wife to call 911 and tell them that there was an intruder."

Deputy sheriffs responded to Joyce's 911 call. They found Savoy dead in the driveway. Appellant told the deputies, "He charged me. . . . The gun's in the house."

The night before Savoy was shot, Moss heard appellant say, "'I have always wondered what it would be like to kill somebody.'" That same night, Wesley Hart, Moss's and Savoy's friend, heard appellant say: "'I just want to kill someone. I just want to shoot

3

somebody.'"  About two months before the shooting, appellant threatened Maddison McCullough, a friend of Savoy.  He said "'I'll kill you on my property and say it's an intruder and get away with it.'"

Appellant did not testify at trial.  But after the shooting, appellant told the police that he was inside the garage with Joyce when appellant came "bargin' in."  Without knocking, Savoy "burst through the [screen] door [into the garage], gets in my face."  He "[j]ust starts mouthin' off about, you know, just starts ramblin'."  He "tell[s] me he was gonna bash my head in." Appellant thought Savoy "was gonna smack me in the head and fuckin' crush my skull in."  "And, then all of a sudden he charges me."  Appellant fired the gun three or four times.

*Appellant's Request that Trial Court*
*Consider His Post-Sentencing Conduct*

Appellant requested that the trial court consider his post-sentencing conduct in determining whether to strike the firearm enhancement.  Appellant submitted to the court a "laudatory chrono" from a catholic prison chaplain; a "[c]haracter [r]eference [l]etter" from a protestant prison chaplain; and commendations for his active participation in a "12-step self-help rehabilitation program," an "Anti-Recidivism Coalition Youth Offender Mentoring Program," and a "live-in placement" program that trains dogs to serve wounded veterans.  In addition, appellant submitted certificates presented to him for successfully completing three 10-week rehabilitation programs.

*Trial Court's Ruling*

The original sentencing judge had retired.  Therefore, a different judge (resentencing judge) conducted a hearing on appellant's motion to strike the firearm enhancement.  The

4

resentencing judge said that she had "had an opportunity to review the entirety of the trial transcripts," including "the pretrial rulings, the trial testimony, and . . . the sentencing hearing."

The resentencing judge believed that her task was "to essentially attempt now to make a determination as to whether with the evidence that was presented during the trial, the Court would have exercised discretion under [section] 12022.53, subsection (h) at the time of [original] sentencing to strike the [firearm enhancement]." She was "putting [her]self back in the situation of [the original sentencing judge] at the time of sentencing."

As aggravating factors, the resentencing judge found that "[t]he crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness." On the other hand, a mitigating factor was that appellant "had either no prior record or an insignificant record of criminal conduct." The resentencing judge considered expert testimony at the trial that the victim had been shot five times and that "the final wound was to his left scapula [shoulder blade] on his back. So he was clearly shot in the back at the very end of that discharge of five rounds." She also considered that when he was shot the victim "was shirtless with no weapons, no implements that could be used as a weapon."

The resentencing judge continued: "I see why [the original sentencing court] made the statement . . . about [appellant] having essentially been a productive member of society prior to the event. But . . . he had spiraled into a lifestyle that involved associations with people who used drug[s], that he was . . . regularly carrying a firearm; that essentially this situation in which he shot an individual who was shirtless with no weapons

5

five times had a certain inevitability to it given the lifestyle and the continued carrying around of a firearm and the association with the people who testified during this trial.  [¶]  So weighing all of those factors . . . , I believe that the interest of justice would not be served by striking [the firearm enhancement] . . . ."

The resentencing judge said that she did not consider appellant's post-sentencing conduct:  "I don't believe that that information is appropriately before the Court for purposes of determining whether to exercise discretion because it appears to me that the [section] 12022.53, subsection (h) analysis should occur at the time of [original] sentencing . . .  with the information before the sentencing judge, which that judge would not have had.  So all of the behavior -- and really it's model behavior that [appellant] has exhibited while at CDCR [California Department of Corrections and Rehabilitation].  I am not taking that behavior into consideration for purposes of the analysis."  "I'm relying primarily upon the testimony presented during the trial and the information that would have been presented to the judge at the time of [original] sentencing."

*Resentencing Judge's Mistaken Belief Regarding*
*Consideration of Postjudgment Conduct in Prison*

Appellant contends that the order declining to strike the firearm enhancement must be reversed because the resentencing judge mistakenly believed that she could not consider his four years of postjudgment conduct in prison.  We agree.  "'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court.  [Citations.]  A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding

6

a material aspect of a defendant's record.'" (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 (*Gutierrez*).)

"[I]t is well settled that when a case is remanded for resentencing after an appeal, the defendant is entitled to 'all the normal rights and procedures available at his original sentencing' [citations], including consideration of any pertinent circumstances which have arisen since the prior sentence was imposed [citation]." (*Dix v. Superior Court* (1991) 53 Cal.3d 442, 460; see also *People v. Jackson* (1987) 189 Cal.App.3d 113, 119 ["[W]here a sentence has been vacated and the issue remanded to the trial court for resentencing, the trial court must consider information concerning defendant's postoriginal sentencing behavior contained in a supplemental probation or corrections report"]; *People v. Brady* (1984) 162 Cal.App.3d 1, 7 ["we hold that upon remand for resentencing, *even when the defendant is ineligible for probation*, if the resentencing court has discretion to alter the length of the defendant's imprisonment, it must obtain a new, updated probation report, *including information regarding the defendant's behavior while incarcerated during the pendency of any appeal*, before proceeding with the resentencing" (italics added)];[2] *People v. Bullock* (1994) 26 Cal.App.4th 985, 990; *People*

---

[2] "*Brady* has since been abrogated to the extent it holds a new probation officer's report is mandatory where a defendant is ineligible for probation. [Citation.] The rationale behind the *Brady* decision still applies, however: 'There may be compelling reasons for ordering a probation report even when the defendant is ineligible for probation. The defendant's postconviction behavior and other possible developments remain relevant to the trial court's consideration upon resentencing.' [Citation.]" (*People v. Garcia* (2008) 161 Cal.App.4th 475, 484, disapproved on other grounds in *People v. Picklesimer* (2010) 48 Cal.4th 330,

*v. Warren* (1986) 179 Cal.App.3d 676, 689-690; *Id.*, at p. 692 ["Consideration of postconviction behavior is not an act of mercy, grace or forgiveness . . . . Rather, consideration of such evidence merely strengthens the court's ability to fit the punishment to the crime *and* the particular defendant"].)

The People argue that the matter must be decided on the facts as of the date of the original sentencing. The People rely on *People v. Pearson* (2019) 38 Cal.App.5th 112 (*Pearson*). This case is distinguishable. In *Pearson* the appellate court "remanded the case to the trial court to hold a new sentencing hearing to consider whether to exercise its discretion to 'strike or dismiss an enhancement otherwise required by section 12022.53.'" (*Id.* at p. 114.) The trial court denied the defendant's motion to strike the enhancement. On appeal the defendant claimed that, in refusing to strike the enhancement, the trial court had "relied entirely on the nature of the offense." (*Id.* at p. 116.) Defendant "contend[ed] the trial court should have also considered the likelihood that [he] would continue to be a danger to society in the future . . . ." (*Ibid.*)

The appellate court upheld the denial of the motion to strike. It observed that, pursuant to rule 4.409 of the California Rules of Court, the trial court is deemed to have considered all relevant sentencing factors unless the record affirmatively demonstrates otherwise. (*Pearson, supra*, 38 Cal.App.5th at p. 117.)[3] The appellate court noted that the trial court had

---

338, fn. 4, and *Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 888.)

[3] All further references to rules are to the California Rules of Court.

expressly considered certain aggravating factors specified in rule 4.421, and "nothing in the record affirmatively establishes that the trial court did not consider other relevant factors it was required to consider." (*Pearson*, *supra*, at p. 117.)

Pearson does not suggest that the trial court would have been barred from considering defendant's post-sentencing conduct while in prison. According to *Pearson*, "[T]he factors to be considered on a remand for resentencing under Senate Bill No. 620 . . . are [not] a blank slate." (*Pearson*, *supra*, 38 Cal.App.5th at p. 116.) "The factors that the trial court must consider when determining whether to strike a firearm enhancement under section 12022.53, subdivision (h) are the same factors the trial court must consider when handing down a sentence in the first instance." (*Id.* at p. 117.) Rules 4.421(c) and 4.423(c) provide that the sentencing court may consider as aggravating or mitigating factors "[a]ny other factors . . . [that] reasonably relate to the defendant." (See also *People v. Stanley* (1984) 161 Cal.App.3d 144, 150 ["The scope of information a sentencing court may consider is very broad, and includes the circumstances surrounding the crime and facts relating to the defendant which are not directly connected to commission of the crime for which he is being sentenced"].) The defendant's post-sentencing conduct while in prison is a factor "[that] reasonably relate[s] to the defendant." (Cal. Rules of Court, rules 4.421(c), 4.423(c).)

The first sentence of section 12022.53(h) provides, "The court may, in the interest of justice pursuant to Section 1385 and *at the time of sentencing*, strike or dismiss an enhancement otherwise required to be imposed by this section." (Italics added.) The People argue that "the Legislature's inclusion of 'at the time of sentencing' must have meant that it desired for courts to use

9

factors that existed only during the time of the original sentencing."

The People overlook the statute's second sentence: "The authority provided by this subdivision applies to *any resentencing* that may occur pursuant to any other law." (§ 12022.53, subd. (h), italics added.) In other words, in the interest of justice and at the time of resentencing pursuant to any other law, the court may strike an enhancement. "[T]his provision extends the benefits of Senate Bill [No.] 620 to defendants who have exhausted their rights to appeal and for whom a judgment of conviction has been entered but who have obtained collateral relief by way of a state or federal habeas corpus proceeding." (*People v. Arredondo* (2018) 21 Cal.App.5th 493, 507.) In such cases the resentencing court may consider factors existing at the time of resentencing, such as the defendant's post-sentencing behavior in prison. (See the discussion at pp. 7-8, *ante*.) It follows that a court should not be barred from considering similar factors where, as here, the matter has been remanded for resentencing because the judgment was not final when section 12022.53(h) became effective. (See *People v. Robbins* (2018) 19 Cal.App.5th 660, 679 ["we conclude section 12022.53, subdivision (h), may be applied in the instant case because . . . defendant's sentence was not final at the time the subdivision became effective"].)

The People's interpretation of section 12022.53(h) could lead to absurd consequences. Our holding allows a consideration of both good and bad post-sentencing conduct in prison. Suppose that an incarcerated defendant whose judgment was not final has obtained a new sentencing hearing. He requests that a firearm enhancement be dismissed pursuant to sections 12022.53(h) and

10

1385. Unlike appellant, the defendant has made no effort to rehabilitate himself. He has joined a violent, racist prison gang, fought with other inmates, and flouted prison rules. Pursuant to the People's interpretation of section 12022.53(h), the trial court could not consider the defendant's post-sentencing conduct. It would have to exercise its discretion based only on facts existing at the time of the original sentencing, even though the defendant's post-sentencing conduct militated against striking the firearm enhancement in the interest of justice. The Legislature surely did not intend that the resentencing court be so constrained in its exercise of discretion.

*Resentencing Judge's Mistake Was Not Harmless Error*

The People maintain that the resentencing judge's misunderstanding of her discretionary power was harmless error because "even if [she] had considered appellant's post-sentencing conduct, it is not reasonably probable that [she] would have stricken the firearm enhancement." This is not the correct standard of review. Where a sentencing court is unaware of "the full scope" of its discretionary power, "the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.'" (*Gutierrez*, *supra*, 58 Cal.4th at p. 1391; accord, *People v. Chavez* (2018) 22 Cal.App.5th 663, 713; see also the discussion in *People v. McDaniels* (2018) 22 Cal.App.5th 420, 425-428.)

"[W]e cannot say with confidence" that the resentencing judge would have declined to strike the enhancement had she realized that she could consider appellant's post-sentencing prison conduct. (*Gutierrez*, *supra*, 58 Cal.4th at p. 1391.) Accordingly, we reverse the order declining to strike the firearm

11

enhancement and remand the matter for a new hearing on this issue.

*Disposition*

The order declining to strike the section 12022.53, subdivision (d) firearm enhancement is reversed. The matter is remanded for the limited purpose of conducting a new hearing on this issue. The trial court shall take into account appellant's post-sentencing conduct in prison as well as other relevant factors. We express no opinion as to how the trial court should exercise its discretion.

CERTIFIED FOR PUBLICATION.

YEGAN, J.

We concur:

GILBERT, P. J.

PERREN, J.

12

Jacquelyn H. Duffy, Judge

Superior Court County of San Luis Obispo

_____

Dwyer + Kim and Jin H. Kim, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Julie A. Harris, Gregory B. Wagner, Deputy Attorneys General, for Plaintiff and Respondent.